# LEWIS L. SHARPE

## v.

# THE W. J. MORGAN & CO.

*Principal and Surety—Attachment in Aid—Death of Principal—Judgment Against Administrator.*

1. There is a distinction between a common law bond and one prescribed by statute; as to the first, the liability of the obligors is limited by the language of the condition; as to the second, the condition will be construed so as to have the effect intended by the statute, because the statute enters into and is a part of the instrument.

2. No change can be made in a given action by which the liability of the surety is increased or changed, but if the liability remains the

same, it is not important that some changes may have been made in the action in which he became bound.

3.   There is nothing in a contention that a judgment should have been against a person named, as administrator, the name therein being followed by "administrator, etc.," there being no dispute that the person against whom judgment was rendered was administrator.

4.   The statute setting forth the rate of interest to be computed upon judgments, does not affect those rendered before its passage.

5.   A recognizance was given in an attachment proceeding, conditioned for the payment of whatever judgment might therein be rendered against the defendant; he died before judgment : *Held*, that the recognizor is bound by a judgment in that proceeding rendered against the administrator of the defendant.

6.   Upon the giving of the recognizance in such case, the proceeding ceases to be one *in rem* and becomes one *in personam*, the recognizance standing as a security for any personal judgment.

[Opinion filed May 6, 1892.]

Appeal from the Superior Court of Cook County; the Hon. Elliott Anthony, Judge, presiding.

Messrs. Condee & Rose, for appellant.

The liability of a surety can not be extended by implication beyond the 'terms of his contract ; to the extent, in the manner, and under the circumstances pointed out in his obligation he is bound, and no further.   Miller v. Stewart, 9 Wheaton, 703; State v. Medary, 17 Ohio, 565; Field v. Rawlings, 1 Gilm. 582; People v. Tompkins, 74 Ill. 482; Cooper v. People, 85 Ill. 417; Mix v. Singleton, 86 Ill. 194; Phillips v. The Singer Mfg. Co., 88 Ill. 305; Dodgson v. Henderson, 113 Ill. 360; Trustees of Schools v. Sheik et al., 119 Ill. 579; The Burlington Ins. Co. v. Johnson, 120 Ill. 622; Vinyard v. Barnes, 124 Ill. 346.

The law is the same whether the bond be statutory or otherwise.   Drake on Attachment, Sec. 325; Andre v. Fitzhugh, 18 Mich. 93; Quillen v. Arnold, 12 Nevada, 234; Richards v. Storer, 114 Mass. 101; Tucker v. White, 5 Allen, 322; Simeon v. Cramm, 121 Mass. 492.

Where there is a condition precedent there can be no liability until such condition is fulfilled.   Bishop on Con-

tracts, Sec. 586; Oakley v. Morton, 1 Kernan, 25; Bruce v. Snow, 20 N. H. 484.

The doctrine of condition precedent applied to statutory attachment bonds. Payne v. Able, 7 Bush. 344; Odell v. Wootten, 38 Ga. 224; Martin v. Kilbourn, 68 Tenn. 331.

The fact that a descriptive word or phrase is added to a party's name in a judgment does not prevent the judgment from being a personal one; the addition is merely surplusage. Black on Judgments, Sec. 214; John Doe, ex dem, etc., v. Richard Roe, casual ejector, etc., 51 Ga. 482; Hall et al. v. Craige, 68 N. Car. 305; Dougherty v. McManus, 36 Iowa, 657; Powers v. Briggs, 79 Ill. 493; Trustees, etc., v. Rautenberg, 88 Ill. 219.

Departure in a replication is bad on demurrer. Gould's Pleadings, 422.

Mr. JAMES FANNING LATHAM, for appellee.

Elementary writers denominate the writ of *scire facias* as, substantially, a declaration, to which the defendant therein may plead or demur as to any other declaration. Black on Judgments, Sec. 486.

This view is held by our own Supreme Court, which declares the writ to be both process and declaration. Peacock v. The People, 83 Ill. 331; Challenor v. Niles, Adm'r, 78 Ill. 78; Compton v. The People, 86 Ill. 176.

In contemplation of law it is merely a continuation of the action which resulted in the judgment, and the writ is required to contain only such recitals as will indicate to the defendant the name of the parties, the judgment, date and amount. It is but a supplemental step in the original action.

As a rule, therefore, the only allowable pleas to a *scire facias* upon a judgment, are:

1. *Nul tiel* record (under which the defendant may deny the existence of the original judgment, or allege that it is entirely void); and

2. Payment, including release, satisfaction or discharge of the original judgment. 1 Black on Judgments, Sec. 493.

Under the first of these defenses mere irregularities can not be taken advantage of. Black on Judgments, Sec. 496.

The writ can be amended like any other declaration. Peacock v. The People, 83 Ill. 331.

If errors there be in the writ, they can only be taken advantage of by proper plea or demurrer. A motion to quash is generally regarded as the better practice.

WATERMAN, P. J.    Appellee, having brought suit against one James Allison, sued out an attachment in aid. Thereafter the following proceeding was had in the said cause:

| " The W. J. Morgan & Company<br>v.<br>James Allison. | Attachment in aid.<br>124,460. |

" This day comes the defendant to this suit and Lewis L. Sharpe, his surety, and enters into a recognizance in open court, whereby they and each of them, for themselves, their heirs, executors and administrators, acknowledge themselves to owe and be indebted unto the plaintiff herein, in the sum of $1,100, to be levied on their respective goods and chattels, lands and tenements and real estate.

" The condition of the above obligation is such, that if the defendant shall pay to the said plaintiff the amount of whatever judgment may be entered herein against said defendant upon a final trial hereof, together with all plaintiff's costs and charges in this behalf expended, within ninety days after the rendition of such judgment, then the said recognizance to be void, otherwise to remain in full force and effect. It is therefore ordered that the attachment herein be, and is hereby dissolved, and the garnishees discharged."

Subsequently the defendant, James Allison, died. His death being suggested, his administrator was brought in, and a judgment was in that cause afterward rendered against Henry A. Foster, administrator of the estate of James Allison. Thereafter in the same proceeding a *scire facias* was issued, requiring appellant, the surety in the recognizance, to show cause why judgment should not be entered

against him. To this appellant pleaded *nul tiel* record of the recognizance. Appellee replied that there was such record, and set out the record of the recognizance in full. Whereupon appellant demurred to the replication, which demurrer was overruled.

If appellant is right in his construction of the effect of the recognizance, his demurrer should have been sustained; but if the condition of the recognizance was that there should be paid such judgment as was rendered in the suit, then, although the *scire facias* was not as artificially drawn as it might have been, yet it was, we think, substantially accurate. Judgment having been entered against appellant, he prosecutes this appeal.

The question presented in this case is whether, when a recognizance is given in an attachment proceeding, conditioned for the payment of whatever judgment may therein be rendered against the said defendant, if the defendant die before judgment, the recognizor is bound by a judgment in that proceeding rendered against the administrator of the defendant. It is manifest that the judgment rendered against the administrator of the defendant does not come within the strict language of the recognizance. It is only by considering the purpose for which the recognizance was made, the statute under which it was given, the end attained by giving it, and the surety intended to be afforded, that the undertaking of the obligors can be made to apply to a case of this kind.

The statute, Sec. 15 of Chap. 11, gives to the defendant a right to have his property released upon entering into a recognizance, conditional, as was the one given in this case; the manifest intent and purpose of the statute is that the recognizance shall stand as security in the place and stead of the property released. Upon the giving of the recognizance, the proceeding ceased to be one *in rem* and became one *in personam*, the recognizance standing as a security for any personal judgment that might be obtained. Hill v. Harding, 93 Ill. 77.

This action did not abate upon the death of the defendant,

Allison, but on the suggestion of his death, summons being issued against his administrator, proceeded against such administrator " as if it had been originally commenced against him." Sec. 11, Chap. 1, R. S.

The undertaking of the appellant was statutory; the recognizance was made in view of these statutes, and in legal contemplation they entered into and formed a part of it. Love v. Fairfield, 5 Gilm. 303; Churchill v. Abraham, 22 Ill. 455; Hibbard v. McKindley, 28 Ill. 240–255.

Entering into this recognizance, as appellant did with knowledge of these statutes, with the understanding that the suit would not abate upon the death of Allison, but might, by the suggestion of his death and the bringing in of his administrator, proceed to judgment against such administrator, in the language of the statute, " as if it had been originally commenced against him," the defendant mentioned in the recognizance must be held to mean the defendant in that action; that is, the defendant then existing, or his personal representative, duly brought in by due course of the law then existing. Against such defendant judgment has been rendered. It clearly was not the intention of the legislature that the security given, upon which a release of the property is obtained, thus enabling it to be carried with the debtor out of the State, should be of no avail in case the debtor died before judgment was obtained. We regard the principle upon which the case of Churchill v. Abraham, 22 Ill. 455, followed in Brown v. Gorton, 31 Ill. 416, was decided, as applicable here.

It will be seen by an examination of the Revised Statutes of 1845, Chap. 9, Sec. 5, that according to the strict letter of the attachment bond considered in Churchill v. Abraham, *supra*, there had not been a breach of the condition, as no damages had been awarded against the principal of the bond in any suit brought for wrongfully suing out the attachment. Nevertheless, a recovery upon the bond was sustained.

There is a distinction between a common law bond and one prescribed by statute; as to the first, the liability of the

obligors is limited by the language of the condition; as to the second, the condition will be construed so as to have the effect intended by the statute, because the statute enters into and is a part of the instrument. Hibbard v. McKindley, *supra*. Appellee was not a party to the giving of the recognizance in this case; it was not a thing he called for or required; it was something which the law compelled him to accept and rely upon in place of the property on which he had a lien. Nor was the change thereafter made in the case, one for which he was responsible.

We have examined the cases cited by appellant, in which, because of a change in the proceedings, the sureties upon statutory bonds were held to have been released. In each of them the change of parties was brought about by the procurement of the plaintiff. The obligation of the obligors upon a statutory recognizance is well stated in Bean v. Parker, 17 Mass. 602, quoted in Quillon v. Arnold, 12 Nev. 234–245, cited by appellant: " When he enters into his contract he pledges himself, on certain contingencies, to pay whatever may be recovered in the usual course of law in the action to which his bond refers."

The principle to be deduced from the authorities seems to be that no change can be made in the action by which the liability of the surety is increased or changed, but if the liability remains the same, it is not important that some change may have been made in the action in which he became bound. In Poole v. Dyer, 123 Mass. 363, the goods of Ellen and John Dyer had been attached in a suit by Wm. Poole against them. Upon bond given to pay any judgment, which the plaintiff might recover in " such action," the attachment was dissolved; afterward the plaintiff discontinued as to Ellen Dyer and took judgment against John Dyer only. Suit was brought upon the bond, and a recovery had thereon sustained. To the same effect are Leonard v. Speidel, 104 Mass. 556; Sanderson v. Stevens, 116 Mass. 133; Campbell v. Brown, 121 Mass. 516; Dalton v. Barnard, 150 Mass. 473. In Poole v. Dyer, *supra*, the court commented upon Tucker v. White, 5 Allen, 322, and Richards v.

Storer, 114 Mass. 161, cited by appellant, and said: "In those cases the plaintiff not only discontinued against one defendant, but summoned in another; there was judgment against a new party not mentioned in the bond."

It is contended that the judgment entered should have been against Henry A. Foster, as administrator, instead of against Henry A. Foster, administrator, etc. It is undisputed that the judgment is against the Henry A. Foster who then was the administrator of the estate of James Allison, and who had been duly made the party defendant to the cause. It was entirely unnecessary that there should have been any *descriptio personarum* following the name of the defendant. The judgment is against the defendant, it to be satisfied in due course of administration. Whether following the name of the defendant were the words " administrator, etc.," or " as administrator, etc.," is immaterial; the liability and rights of the recognizor were in no way affected thereby.

Moreover, the defendant did not plead that there was no record of any such judgment. The recognizance contains the words, "The defendant shall pay to the said plaintiff the amount of whatever judgment may be entered herein against the said defendant."

The words " said defendant" not being in the statute, it is insisted that the recognizance did not follow it. The words of the statute, " that the defendant will pay the plaintiff the amount of the judgment and costs which may be rendered against him," we regard as equivalent to the words " that the defendant will pay the plaintiff the amount of the judgment and costs that may be rendered against said defendant." A hypercriticism of the statute might raise the question as to whether the word " him " alludes to the plaintiff or the defendant.

It is also urged that the judgment against appellant is for too large an amount, as interest was computed on the judgment against Foster, the administrator of Allison, at six per cent, whereas, since the statute of 1890–91, judgments only bear interest at five per cent.

The judgment against the administrator was rendered prior to enactment of the statute.

The statute does not affect contracts made before its passage. A judgment is a contract. Scarborough v. Dugan, 10 Cal. 305; Sawyer v. Vilas, 19 Vt. 43; Taylor v. Root, 4 Keyes (N. Y.), 335; Morse v. Toppan, 3 Gray, 411; Childs v. Harris Manf. Co., 68 Wis. 251; Weaver v. Lapsley, 43 Ala. 224; 3 Blackstone's Com., 160; 1 Parsons on Cont., 7. There is nothing in the statute indicating that the legislature intended that it should operate upon obligations already fixed. The interest was therefore correctly computed.

The recognizance given in this case was conditioned as prescribed by the statute; the breach assigned is in the terms of the condition; the conduct of the cause was such as the law, existing when the recognizance was made, permitted, and such as must have been contemplated by the obligors, might be followed; the statutes then existing entered into and formed a part of the undertaking of the principal and surety; and we think the manifest intention of such statutes was to give to the plaintiff, upon the release of the property attached, security for whatever judgment it might obtain in that proceeding against the defendant or his personal representative.

The judgment of the Superior Court will therefore be affirmed.

*Judgment affirmed.*