## Fireman's Fund Insurance Company v. The Western Refrigerating Company.

| 55 | 329 |
| 64 | 285 |
| 64 | 330 |
| 55 | 329 |
| 162s | 322 |
| 55 | 329 |
| 70 | 146 |
| 55 | 329 |
| 100 | ¹559 |

1. Insurance—*Policies to be Construed Most Favorably to the Insured.*—Policies of insurance are to be liberally construed in favor of the insured.

2. Same.—*What Is Not Specific Insurance.*—Where the insured is a storage company, with insurance on merchandise and packages for the same, its own, or the property of others, which is constantly changing, and so from day to day as property is received and sent out, the articles, the interest in which is insured, are changing, and so, too, is the interest of the insured as the amount of their interest increases or diminishes, *it is held* that the insurance of the merchandise and packages for the same is not a specific insurance.

3. Same—*Limitations in a Policy—When Sustained.*—A provision in a policy of insurance limiting the right of action thereon to a fixed

330     APPELLATE COURTS OF ILLINOIS.

VOL. 55.] Fireman's Fund Ins. Co. v. Western Refrigerating Co.

period after the happening of a loss will be sustained only when it is reasonable. It will not be construed so as to favor fraud or imposition.

4. INTEREST—*Construction of Statute.*—The statute which went into effect July 1, 1891, reducing the rate of interest from six per cent per annum to five, did not affect matured demands existing before the statute took effect.

5. CONTRACTS—*A Judgment Is Not.*—A judgment is not a contract.

**Memorandum.**—Assumpsit. In the Superior Court of Cook County; the Hon. JAMES GOGGIN, Judge, presiding. Declaration on a policy of insurance. Plea of general issue, and stipulation that the defendant might introduce all defenses that could be successfully pleaded under plea of the general issue; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the October term, 1894, and affirmed. Opinion filed November 12, 1894.

## STATEMENT OF THE CASE.

On the 20th day of December, 1890, the Fireman's Fund Insurance Company issued to the Western Refrigerator Company its certificate or policy of insurance, covering the sum of $1,500, for four months, the description of the subject of the insurance being as follows:

"Form C.

On merchandise and packages for same, their own or the property of others, not specifically insured, contained in the brick building known as the Western Refrigerating Company's Warehouse C, situate Nos. 231 and 233 Michigan street, Chicago, Illinois."

On January 20, 1891, a fire occurred in warehouse C, which damaged or destroyed its contents. The Refrigerating Company made proof of loss, showing that at the date of said fire it held insurance written under four different forms, designated as "Form A," "Form B," "Form C," and "Form D."

Form A is as follows: "On poultry and packages for same, their own or held by them in trust or on commission, or sold but not delivered, contained in the brick building known as the Western Refrigerating Company's Warehouse C, situate Nos. 231 and 233 Michigan street, Chicago, Illinois."

Under this form the Refrigerating Company had $3,000 insurance in other companies.

Form B is as follows: "On poultry and packages for same, their own or the property of others, not specifically insured, contained in the brick building known as Western Refrigerating Company's Warehouse C, situate Nos. 231 and 233 Michigan street, Chicago, Illinois."

Under this form the Refrigerating Company had $4,000 insurance in other companies.

After the proofs were received, a controversy arose between Mr. Baker, the president of appellee, and Mr. Chard, the general manager of appellant, as to whether appellant's policy covered poultry, Mr. Baker insisting that it did, and Mr. Chard contending that it did not. The Fireman's Fund refused to pay any loss on poultry, because it insisted that the poultry was specifically insured for $7,000 in six other companies, and hence not covered by the Fireman's Fund policy, which covered only merchandise not specifically insured.

The fire occurred on January 29, 1891. The præcipe in this suit was filed, and this suit begun, on December 23, 1891, which was nearly eleven months after the fire.

The policy provides as follows: "It is furthermore hereby expressly provided and mutually agreed that no suit or action against the company for the recovery of any claim by virtue of this policy, shall be sustainable in any court of law or chancery until after an award shall have been obtained, fixing the amount of such claim in the manner above provided, nor unless such suit or action shall be commenced in the name of the party assured, and within six months after the occurrence of the fire by reason of which the claim for loss or damage is made, and should any suit or action be commenced against this company after the expiration of the aforesaid six months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding."

The policy further provides as follows: "It is hereby understood and agreed by and between this company and

332    APPELLATE COURTS OF ILLINOIS.

VOL. 55.] Fireman's Fund Ins. Co. v. Western Refrigerating Co.

the assured, that this policy is made and accepted in reference to the foregoing terms and conditions which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto, in all cases not herein otherwise specifically provided for in writing.

It is further understood and made a part of this contract that only the manager of this company at Chicago has authority to waive, modify or strike from this policy any of its printed conditions."

BATES & HARDING, attorneys for appellant.

APPELLEE'S BRIEF, GEO. C. FRY AND WALTER S. MAHER, ATTORNEYS.

The court, in construing an instrument, ought to put itself in the situation of the parties at the time the instrument was executed, and with the light of the surrounding circumstances to so endeavor to construe the instrument as to effectuate the intention of the parties.   May on Ins., Sec. 172; Wood on Ins., Sec. 50; 1 Greenleaf on Ev., Sec. 282; 2 Parsons on Contracts, Secs. 499, 549.

In The Conductors' Benefit Ass'n v. Loomis, 142 Ill. 560, Mr. Justice Magruder says:

" Where an insurance company leads a party to delay the bringing of suit, or to dismiss a suit already pending, by holding out hopes of adjustment, or by making promises to pay, it is estopped from taking advantage of such delay or dismissal, by pleading the statute of limitations."  See also, Derrick v. Lamar Ins. Co., 74 Ill. 404; Home Ins. Co. v. Myer, 93 Id. 271; Bacon on Ben. Soc. and Life Ins., Sec. 445.

A policy of insurance upon a stock of goods which is being constantly sold and constantly replenished covers as well the new purchases as those on hand at the date of the policy.   The question in this case is whether the Anapow tobacco did, upon its purchase by Michelson, or at any time before the fire, become a part of his stock, and thereby fall under the protection of his policy.   Whether it became a

part of the stock was a question of fact for the jury, and should have been submitted to them." Peoria F. and M. Ins. Co. v. Anapow, 45 Ill. 86.

It is admitted that the proofs were duly made and received at Chicago by appellant on March 28, 1891; the money then became due sixty days after that date, or May 25, 1891. This was the contract of the parties both at the time the contract was made and at the time the right of action accrued to appellee. It governs the rights of the parties. The act of the legislature of this State reducing interest to five per cent was not approved until June 17, 1891, and did not go into effect until July 1, 1894. It does not, therefore, affect appellee. Article II, Sec. 14, Constitution of 1870; Sutherland on Statutory Construction, Secs. 471–475.

Mr. Presiding Justice Waterman delivered the opinion of the Court.

It appeared in evidence upon the trial of this cause, that at the time of the fire there was on storage with appellee, a mere storage company, $55,000 worth of poultry belonging to thirty-one different parties, upon which appellee had claims amounting to $24,833.12. Some of the owners had, upon such of the poultry as belonged to them, separate insurance, not included in that issued to appellee.

Each lot of goods stored by appellee was marked with a different mark; the goods having been received at different times. It is manifest that the insurance upon "poultry and packages for same," was of the interest of appellee in all poultry in the refrigerating warehouse.

This poultry was continually changing; and so from day to day as poultry was received and sent out, the articles, the interest in which was insured, were changing, and so, too, was the interest of appellee, as the amount of their charges increased or diminished. No specific article was insured. The utmost that can be said is that a special class of goods was insured by the other policies containing forms "A" and "B."

Was that such a specific insurance as is mentioned in the policy upon which this suit is brought? That policies of insurance are to be liberally construed in favor of the insured is well established. Commercial Ins. Co. v. Robinson, 64 Ill. 268; Healy v. Mutual Accident Ass'n, 133 Ill. 556.

Applying this rule to the present case we think it must be held that the insurance of poultry and packages for same, is not a specific insurance. Had the insurance been of the packages of poultry then in warehouse C, marked "John Doe," such insurance might well have been held to be specific, but insurance of a class of constantly changing articles can not, under the terms of this policy, be so regarded. May on Insurance, Sec. 436.

We think that the conduct of the defendant in respect to the provisions of the policy limiting the right of action thereon to the period of six months after the happening of the loss was such that it can not now insist upon this limitation. Conditions of this nature are sustained only when they are reasonable; they will not be construed so as to favor fraud or imposition.

The agent of the defendant, Mr. Bliss, said in substance to the plaintiff, that the limit of time would cut no figure; that the defendant was ready to settle for such an amount as it was liable, whether suit was brought or not. The defendant, by its conduct, not merely agents of the company, but the defendant—for acts of its agents within the scope of their authority are its acts—entered into negotiations with the plaintiff for a settlement of his claim; these negotiations were carried on apparently, and we must presume in good faith, and were of such a character as were calculated to induce the plaintiff to withhold the bringing of suit under the belief that the defendant would pay without suit, or if it did not do this, that it would not urge as a defense that the plaintiff had not broken off negotiations and brought suit ere the six months had elapsed. Whatever may have been the limitation as to waiving conditions of the policy, the company itself could, by its conduct, estop itself to set up this defense. This company, like all other corporations,

acts through and by agents only. In the absence of proof to the contrary it must be presumed that it, that is, its di-. rectors and managing officers, knew what was going on relative to a settlement of this loss, and what the plaintiff was being induced to believe and rely on.

Under such circumstances, to permit the defendant to now avail itself of this defense would be to encourage deception and fraud. Andes Ins. Co. v. Fish, 71 Ill. 625; Home Ins. Co. v. Mayer, 93 Ill. 276; Allemania Ins. Co. v. Peck, 133 Ill. 220; Conductors' Benefit Ass'n v. Loomis, 142 Ill. 560; Phoenix Ins. Co. v. Hart, 149 Ill. 513; May on Insurance, Sec. 138; Ætna Ins. Co. v. Maguire, 51 Ill. 342; N. E. Fire & M. Ins. Co. v Schettler, 38 Ill. 166.

The proofs of loss in this case were delivered to the defendant on the 28th day of March, 1891. The liability of the company matured May 27, 1891. At the last mentioned date, the rate of interest as fixed by statute upon such demands as this was six per cent. July 1, 1891, a statute of this State went into effect reducing the rate of interest upon claims like this to five per cent per annum.

In Sharpe v. W. J. Morgan & Co., 44 Ill. App. 346, the question of the effect of this statute upon claims that became due before the statute went into effect was considered.

We there held that the statute was not designed to and did not affect matured demands existing before the statute took effect.

The judgment by us rendered in that case was affirmed by the Supreme Court in an opinion published in 144 Ill. 382.

We feel bound by the decision of the Supreme Court above mentioned, as well as by our own, more especially since—although, in the case in this court, the writer of the opinion fell into the error of saying that a judgment is a contract—the judgment of this court in that case was affirmed.

However true it may be in other States that a judgment is not a contract, it is not the law in Illinois, as appears by

the cases of Williams v. Waldo, 3 Scammon 264; Rae v. Hulbert, 17 Ill. 572; Templeton v. Home, 82 Ill. 491.

The judgment of the Superior Court is affirmed.

MR. JUSTICE SHEPARD.

Unless we are bound by the decision of the Supreme Court in the case of Sharpe v. Morgan, 144 Ill. 382, where, although the point was involved it is not mentioned in the opinion, I should be inclined to withdraw from the position we took in that case when it was before us, in regard to interest. The sounder rule it seems to me would be that in actions *ex contractu*, where there is no express agreement to pay interest, but where interest is recoverable as damages for the withholding of payment, the rate should follow the statute, and if the statutory rate is changed after the right of action accrues, interest should be reckoned at the old rate until the change, and thereafter at the new rate.

Such is the rule laid down in 1 Sedgwick on Damages, Section 339, and supported by numerous authorities there cited. See, also, 1 Sutherland on Damages, 666 *et seq.*

That such a rule does not give an unlawful retrospective effect to the statute, see a careful and elaborate review of the authorities in Bullock v. Boyd, 1 Hoffman's Chancery Rep., 294.